IN THE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KASEY KLAAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24 C 13054 |
| | ) | |
| CHARLES A. BOLLMAN, | ) | Judge _____ |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Kasey Klaas, through his attorneys, Polales Horton & Leonardi LLP and The Peacock Law Group, for his Complaint against Charles A. Bollman, seeking the avoidance of a fraudulently transferred parcel of real estate from Brock Flagstad to Charles A. Bollman, states as follows:

## PARTIES

1. Plaintiff is Kasey Klaas, a resident of Chicago, Illinois. Klaas is the holder of a money judgment against Channel Clarity Holdings LLC and another money judgment against Brock Flagstad.

2. Non-party Brock Flagstad is the former business partner of Klaas. Flagstad was the majority owner and CEO of Channel Clarity Holdings, LLC (Channel Clarity").

3. Non-party "Oxford Holdings, LLC" is ostensibly a limited liability company incorporated under the laws of the state of Illinois. As described below, Oxford Holdings is nothing more than Flagstad's alter ego.

4. Defendant is Charles A. Bollman, a resident of Cincinnati, Ohio. On information and belief Charles A. Bollman is the father of Christopher A. Bollman. Christopher on information and belief is a friend of Flagstad. As described below, Defendant is the transferee of the fee simple title to Flagstad's multi-million-dollar Georgia seaboard mansion.

## JURISDICTION AND VENUE

5. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as Klaas is a resident of this district. A substantial part of the events and omissions giving rise to this fraudulent transfer claim against Bollman occurred in this district. Additionally, the injury alleged in this complaint is the unlawful impairment of Klaas's right to enforce the money judgments he obtained against Channel Clarity and Flagstad. The impairment of Klaas's judgment enforcement rights occurred in the state court in this district over a period of six years in which Flagstad has engaged in at least three subterfuges to hinder, delay, and defraud Klaas in his attempts to recover on a $1.8 million debt Channel Clarity owes Klaas.

## BACKGROUND

### The Underlying Judgment Enforcement Proceedings

7. In May 2021, the Circuit Court of Cook County, Illinois entered a judgment in favor of Klaas and against Channel Clarity for $1,835,953.25 in the case

of *Klaas v. Channel Clarity Holdings LLC*, Case No. 2019 L 8696 (the "Channel Clarity Judgment" and "Channel Clarity Holdings Case"). Brock Flagstad is the owner of Channel Clarity and its chief executive officer. Flagstad had nearly total control over every aspect of Channel Clarity's business operations.

8. During proceedings to enforce the Channel Clarity Judgment, Klaas discovered that in the period 2019 to 2020 Channel Clarity made transfers for no consideration to a shell company owned and controlled by Flagstad, Financial Freedom Advisors LLC (FFA and FFA Transfers), from which Flagstad personally benefited.

9. Klaas filed a Motion to find Fraudulent Transfer Liability and Enter Judgment against Flagstad. Flagstad failed to timely file a response to the Motion or seek an extension. The Court took the Motion under advisement and issued a body attachment order for Flagstad's civil arrest for obstreperous conduct in the judgment enforcement proceedings unrelated to the Fraudulent Transfer Motion.

10. On October 17, 2024, Flagstad's new counsel moved for additional time to respond to the fraudulent transfer motion. The Court denied the request "because of Flagstad's repeated refusal to meet any deadlines." *Id*.

11. Thereafter, the Circuit Court granted in part and denied in part the fraudulent transfer motion, entering judgment against Flagstad for $812,169.83. Ex. A, October 2024 Judgment Order.

12. The Court found the fraudulent transfer motion to be "supported by

3

record references, principally Flagstad's own citation examination and admissions" and that the evidence established that Flagstad: (1) "personally benefitted from the transfers to FFA" (a badge of fraud); (2) Flagstad "made those transfers [to FFA] at a time when Channel Clarity was insolvent," (a badge of fraud), (3) the [FFA] transfers were made to an "insider" (a badge of fraud), and (4) "[n]one of the transfers were made for any consideration" (a badge of fraud). *Id*.

13. Accordingly, the Circuit Court found that the FFA Transfers were made "with actual intent to hinder or delay Klaas in his attempt to collect on his judgment against Channel Clarity," entering judgment "against Flagstad and in favor of Klaas for $812,169.33." *Id*. The Court denied the motion to the extent it alternatively requested relief via an alter ego or piercing the corporate veil theory. *Id*. at 2-3.

14. On November 18, 2024, Flagstad moved for the Circuit Court to reconsider its judgment. The Circuit Court denied the motion to reconsider in an order dated December 17, 2024, finding under Ill. Sup. Ct., R 304(a), "that there is no just reason for delaying either enforcement or appeal or both of the Court's October 17, 2024, judgment entered in favor of Kasey Klaas and against Brock Flagstad for $812,169.83."

15. The October 2024 Judgment was the third judgment the Circuit Court granted in favor of Klaas against Flagstad in the preceding 12 months.

16. In the first instance, the Circuit Court entered a fraudulent transfer judgment against Flagstad, voiding an "insider" lien that Flagstad had placed against

4

Channel Clarity's assets in May 2021 at the same time as the Circuit Court was entering the $1.8 million judgment against Channel Clarity and obviously to thwart Klaas's judgment enforcement efforts. Circuit Court Order dated 10/30/23 (the "October 2023 Judgment").

17. In a second instance, the Circuit Court entered a $119,367 money judgment in favor of Klaas and against Flagstad based on Flagstad, in the period of November 2022 through March 2023 unlawfully transferring Channel Clarity assets subject to Klaas's judgment lien and again to thwart Klaas's judgment enforcement efforts. Order dated 11/13/23 (the "November 2023 Judgment").

18. Those two judgments were followed by the Circuit Court's entry of the October 2024 Judgment against Flagstad (Ex. B).

19. Flagstad has repeatedly sought to thwart Klaas's judgment enforcement efforts by fraudulently and unlawfully transferring Channel Clarity assets so Klaas could not seize them. In the 2019 to 2020 period as evidenced by the October 2024 Judgment. In the May 2021 period as evidenced by the November 2023 Judgment. Finally, in the November 2022 to March 2023 period as evidenced by the October 2023 Judgment.

### The Transfer of The Sea Island, Georgia Property

20. There is parcel of real estate situated in the city of Sea Island, Georgia, commonly known as 114 East l0th Street, Sea Island, Georgia 31561-9658, denominated parcel identification number 05-00433 and which is legally described in

5

Exhibit A (hereinafter the "Flagstad's Sea Island Property" or the "Sea Island Property").

21. On February 19, 2021, Kyle C. Mann, a Texas resident, was the fee simple owner of the Sea Island Property. On that date, Mann entered into a Residential Lease Agreement and a Purchase and Sale Agreement with Brock Flagstad and Meredith Flagstad for the Sea Island Property ("Sea Island Property Agreement"). According to the Sea Island Property Agreement, the lease would expire on January 31, 2024, with a closing date of February 1, 2024, established for the purchase. Notice of the Sea Island Property Agreement was recorded in Glynn County, GA Recorder of Deeds Office in September 2021.

22. On information and belief, since at least February 19, 2021, to the date of this complaint's filing, Brock Flagstad has occupied the Sea Island Property with his spouse and children as his and their primary residence.

23. Despite at the time being a Georgia resident, on May 24, 2023, Flagstad incorporated an entity called "Oxford Holdings, LLC" with the Illinois Secretary of State. The articles of incorporation Flagstad drafted and signed for Oxford Holdings were replete with intentional misrepresentations Flagstad made to obscure that he exclusively owns and controls Oxford Holdings; Flagstad's misrepresentations as to the street addresses of Oxford Holdings place of business and mangers were also meant to obscure its location and prevent Oxford Holdings from being amenable to service of process. Oxford Holdings is Flagstad's alter ego that Flagstad created to

6

hide his interest in the Sea Island Georgia Property.

24. On or about February 29, 2024, Kyle C. Mann by deed to "Oxford Holdings, LLC" conveyed fee simple title to the Sea Island property in exchange for about $2.3 million dollars. On information and belief, the transaction was funded by a loan Flagstad, operating as "Oxford Holdings," obtained from Next Bridge Funding, LLC (of Plymouth, MI) and secured by a mortgage against the Sea Island Property that "Oxford Holdings" conveyed to Next Bridge Funding LLC for the maximum principal sum of $3,091,925.

25. On or about April 19, 2024, Next Bridge paid Klaas $127,500 to satisfy the November 2023 Judgment Klaas had against Flagstad.

26. On or about April 19, 2024, Flagstad, via "Oxford Holdings," by deed to defendant Charles A. Bollman conveyed fee simple title to the Seal Island Property to Bollman.

27. At the same time he took title to the Sea Island Property, Charles A. Bollman mortgaged the Sea Island Property to Kemba Credit Union in the fixed sum of $3,345,000 with a fixed 30-year term and an adjustable interest rate, initially 6.75 per cent, and subject to change beginning May 2029. In addition, Charles A. Bollman signed a "Second Home Rider" to the mortgage. The monthly mortgage payment is estimated to be $21,695.61.

28. On June 6, 2024, after his attorney withdrew from the case, Flagstad filed an appearance in the Channel Clarity Holdings Case listing the Sea Island

7

Property as his address.

29. Flagstad has at least one other money judgment of record that appears unsatisfied and at least three lawsuits in which other creditors are seeking personal money judgments against Flagstad.

## COUNT I

### Fraudulent Transfer under 740 Ill. Comp. Stat. 160/5(a)[1]

30. Klaas realleges and incorporates by reference paragraphs one through 29 as paragraphs one through twenty-nine (29) of this Count I.

31. Under 740 ILCS 160/5(b), Flagstad, via his alter ego, Oxford Holdings, transferred the Sea Island Property to Bollman with actual intent to hinder, delay or defraud Klaas because:

   a. The transfer was to an insider, inasmuch as Charles Bollman is the father of Flagstad's friend.

   b. Flagstad retained possession or control of the property transferred after the transfer inasmuch as the Sea Island Property remained

---

[1] The statute provides that

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: **(1)** with actual intent to hinder, delay, or defraud any creditor of the debtor . . .

740 Ill. Comp. Stat. 160/5(a).

    Flagstad's residence before and after the transfer.

c. The transfer obligation was concealed inasmuch as Flagstad used his alter ego, Oxford Holdings: (i) to conceal Flagstad taking ownership of the Sea Island Property and (ii) to further conceal his ownership by the "paper transfer" to Charles Bollman. In addition, Flagstad's incorporation of Oxford Holdings itself was riddled with fabrications meant to obscure the location of Oxford Holdings for service of process purposes.

d. In the four years before the Sea Island Property transfer was made, Klaas had been investigating and prosecuting Flagstad's diversion and embezzlement of Channel Clarity's assets.

e. In November 2023, Klaas obtained a $119,000 judgment against Flagstad. On February 29, 2024, Flagstad, using his alter ego, Oxford Holdings, acquired a fee simple interest in the Sea Island Georgia Property and a month later Flagstad's alter ego, Oxford Holdings, transferred the Property to Charles Bollman to further obscure Flagstad's ownership of the Sea Island Property.

f. Flagstad's other creditors besides Klaas have filed suits to obtain personal money judgments against Flagstad and at least one of those suits was reduced to a money judgment against Flagstad before the Sea Island Property Transfer occurred.

9

    g. The transfer of the Sea Island Property represented Flagstad's efforts to conceal the Sea Island Property from Klaas.

    h. On information and belief, Charles Bollman provided no consideration to Flagstad in exchange for the Sea Island Property.

    i. On information and belief, the Sea Island Property transfer rendered Flagstad insolvent.

    j. The Sea Island Property transfer occurred within months of Klaas obtaining two different money judgments against Flagstad.

32. Flagstad caused the transfer of the Sea Island Property to Charles Bollman to hinder, delay, and defraud his creditors, including Klaas, in the collection of their lawful debts.

33. Flagstad undertook the aforesaid acts and omissions in violation of section 5 of the Illinois Uniform Fraudulent Transfer Act, 740 Ill. Comp. Stat. 160/5(a).

34. Wherefore, Klaas requests this court to:

    a. Find the facts in favor of Klaas and against Bollman.

    b. Pursuant to 740 ILCS 160/8(a)(1), void the transfer to Bollman to the extent necessary to satisfy the debts owing to Klaas.

    c. Pursuant to 740 ILCS 160/8(b), issue a writ of execution so that Klaas may levy on the Sea Island Property to satisfy the Klaas's judgment debt.

    d. Pursuant to 740 ILCS 160/9(b), enter judgment in favor of Klaas and

against Bollman for the value of the Sea Island Property to extent necessary to satisfy Klaas's judgment debt.

e. Pursuant to 740 ILCS 160/8(a)(3)(C), grant any other relief the circumstances may require.

Respectfully submitted,

KASEY KLAAS

By: s/ Joseph A. Stewart

| | |
|---|---|
| Dean J. Polales | Joseph A. Stewart |
| Timothy E. Horton | THE PEACOCK LAW GROUP |
| POLALES HORTON & LEONARDI | 161 North Clark Street |
| 53 W. Jackson Blvd. | Suite 1600 |
| Suite 1325 | Chicago, Illinois 60601 |
| Chicago, IL 60604 | (312) 741-1070 |
| (312) 598-2522 | joseph.stewart@thepeacocklawgroup.com |
| thorton@polaleshorton.com | |

11

## EXHIBIT A - LEGAL DESCRIPTION

All that certain tract or parcel of land situate, lying and being in the G.M.D. 25, Sea Island, Glynn County, Georgia and shown on a survey plat by Robert N. Shupe, GA R.L.S. No. 2224, titled "ALTA/ACSM LAND TITLE SURVEY OF LOT 246 & A PORTION OF RIBAULT LANE, BLOCK '30' SEA ISLAND SUBDIVISION NO. 1", dated 7/1/14 and being more particularly described as follows:

Beginning at a 1/2" capped iron rebar found (RLS 1927) located on the Northeastern Right-of-Way of Delgado Street (A/KIA East Tenth Street); said point being 260.00 feet Southeasterly from the intersection of the Northeastern Right-of-Way of Delgado Street and the Southeastern Right-of-Way of Sea Island Drive; proceed thence, along the lands of James F. Compton and Grace M. Compton North 38 Degrees 03 Minutes 40 Seconds East for a distance of 150.00 feet to a 1/2" Iron Rebar found; thence along the lands of the C. Lynne Vollmer Revocable Trust South 51 degrees 56 Minutes 20 Seconds East for a distance of 75.00 feet to a concrete monument found; thence along the lands of Robert W. Fisher and Catherine N. Fisher South 38 degrees 03 Minutes 40 Seconds West for a distance of 150.00 feet to a I" iron rebar found located on the said Right-of-Way of Delgado Street; thence along the said Right-of-Way of Delgado Street North 51 degrees 56 Minutes 20 Seconds West for a distance of 75.00 Feet to the point or place of beginning, said Lot, Tract or Parcel of land contains 11,250 Sq. Ft.

Said plat of survey is recorded in the Office of the Clerk of Superior Court of Glynn County, Georgia, at Plat Book 32, Page 427.

Parcel ID: 05-00433

Commonly known as: 114 East 10th Street, Sea Island, GA 31561