# EXHIBIT 1

IN THE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KASEY KLAAS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 24 C 13054 |
| CHARLES A. BOLLMAN, | ) ) Judge John Robert Blakey |
| Defendants. | ) ) ) ) |

### AMENDED ANSWER TO PLAINTIFF'S COMPLAINT

NOW COME the Defendant, CHARLES A. BOLLMAN, individually, by and through his attorneys, KONICEK & DILLON, P.C., and, as for his Amended Answers to Plaintiff's Complaint and Affirmative Defenses, states as follows:

### PARTIES

1. Plaintiff is Kasey Klaas, a resident of Chicago, Illinois. Klaas is the holder of a money judgment against Channel Clarity Holdings LLC and another money judgment against Brock Flagstad.

**ANSWER:** **The Defendant lacks sufficient knowledge to admit or deny the allegations of ¶1.**

2. Non-party Brock Flagstad is the former business partner of Klaas. Flagstad was the majority owner and CEO of Channel Clarity Holdings, LLC (Channel Clarity).

**ANSWER:** **The Defendant lacks sufficient knowledge to admit or deny the allegations of ¶2.**

3. Non-party "Oxford Holdings, LLC'" is ostensibly a limited liability company incorporated under the laws of the state of Illinois. As described below, Oxford Holdings is nothing more than Flagstad's alter ego.

**ANSWER:** **The Defendant denies the allegations of ¶3.**

4. Defendant is Charles A. Bollman, a resident of Cincinnati, Ohio. On information and belief Charles A. Bollman is the father of Christopher A. Bollman. Christopher on information

1

**EXHIBIT 1**

and belief is a friend of Flagstad. As described below, Defendant is the transferee of the fee simple title to Flagstad's multi-million-dollar Georgia seaboard mansion.

**ANSWER:** **The Defendant admits that he is a resident of Ohio, that he is the father of Christopher Bollman, and that Christopher Bollman and Brock Flagstad were friends. Defendant denies any remaining allegations.**

## JURISDICTION AND VENUE

5.     This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(l) as plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000.

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶5.**

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as Klaas is a resident of this district. A substantial part of the events and omissions giving rise to this fraudulent transfer claim against Bollman occurred in this district. Additionally, the injury alleged in this complaint is the unlawful impairment of Klaas's right to enforce the money judgments he obtained against Channel Clarity and Flagstad. The impairment of Klaas's judgment enforcement rights occurred in the state court in this district over a period of six years in which Flagstad has engaged in at least three subterfuges to hinder, delay, and defraud Klaas in his attempts to recover on a $1.8 million debt Channel Clarity owes Klaas.

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶6.**

## BACKGROUND

### The Underlying Judgement Enforcement Proceedings

7.     In May 2021, the Circuit Court of Cook County, Illinois entered a judgment in favor of Klaas and against Channel Clarity for $1,835,953.25 in the case of *Klaas v. Channel Clarity Holdings LLC*, Case No. 2019 L 8696 (the "Channel Clarity Judgment'" and "Channel Clarity Holdings Case"). Brock Flagstad is the owner of Channel Clarity and its chief executive officer. Flagstad had nearly total control over every aspect of Channel Clarity's business operations.

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶7.**

8.     During proceedings to enforce the Channel Clarity Judgment. Klaas discovered that in the period 2019 to 2020 Channel Clarity made transfers for no consideration to a shell company owned and controlled by Flagstad, Financial Freedom Advisors LLC (FFA and FFA Transfers), from which Flagstad personally benefited.

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶8.**

9. Klaas filed a Motion to find Fraudulent Transfer Liability and Enter Judgment against Flagstad. Flagstad failed to timely file a response to the Motion or seek an extension. The Court took the Motion under advisement and issued a body attachment order for Flagstad's civil arrest for obstreperous conduct in the judgment enforcement proceedings unrelated to the Fraudulent Transfer Motion.

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶9.**

10. On October 17, 2024, Flagstad's new counsel moved for additional time to respond to the fraudulent transfer motion. The Court denied the request "because of Flagstad's repeated refusal to meet any deadlines." *Id.*

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶10.**

11. Thereafter, the Circuit Court granted in part and denied in part the fraudulent transfer motion, entering judgment against Flagstad for $812,169.83. Ex. A, October 2024 Judgment Order.

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶11.**

12. The Court found the fraudulent transfer motion to be "supported by record references principally Flagstad's own citation examination and admissions" and that the evidence established that Flagstad: (1) "personally benefitted from the transfers to FFA" (a badge of fraud); (2) Flagstad "made those transfers [to FFA] at a time when Channel Clarity was insolvent," (a badge of fraud), (3) the [FFA] transfers were made to an "insider" (a badge of fraud), and ( 4) "[n]one of the transfers were made for any consideration" (a badge of fraud). *Id.*

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶12.**

13. Accordingly, the Circuit Court found that the FFA Transfers were made "with actual intent to hinder or delay Klaas in his attempt to collect on his judgment against Channel Clarity," entering judgment "against Flagstad and in favor of Klaas for $812,169.83." *Id*. The Court denied the motion to the extent it alternatively requested relief via an alter ego or piercing the corporate veil theory. *Id*. at 2-3.

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶13.**

14. On November 18, 2024, Flagstad moved for the Circuit Court to reconsider its judgment. The Circuit Court denied the motion to reconsider in an order dated December 17, 2024, finding under Ill. Sup. Ct., R 304(a), "that there is no just reason for delaying either enforcement or appeal or both of the Court's October 17, 2024, judgment entered in favor of Kasey Klaas and against Brock Flagstad for $812,169.83.'"

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶14.**

15. The October 2024 Judgment was the third judgment the Circuit Court granted in favor of Klaas against Flagstad in the preceding 12 months.

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶15.**

16. In the first instance, the Circuit Court entered a fraudulent transfer judgment against Flagstad, voiding an "insider'" lien that Flagstad had placed against Channel Clarity's assets in May 2021 at the same time that the Circuit Court was entering the $1.8 million judgment against Channel Clarity and obviously to thwart K1aas's judgment enforcement efforts. Circuit Court Order dated 10/30/23 (the "October 2023 Judgment").

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶16.**

17. In a second instance, the Circuit Court entered a $119,367 money judgment in favor of Klaas and against Flagstad based on Flagstad, in the period of November 2022 through March 2023 unlawfully transferring Channel Clarity assets subject to Klaas's judgment lien and again to thwart Klaas's judgment enforcement efforts. Order dated 11/13/23 (the "'November 2023 Judgment").

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶17.**

18. Those two judgments were followed by the Circuit Court's entry of the October 2024 Judgment against Flagstad (Ex. B).

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶18.**

19. Flagstad has repeatedly sought to thwart Klaas's judgment enforcement efforts by fraudulently and unlawfully transferring Channel Clarity assets so Klaas could not seize them. In the 2019 to 2020 period as evidenced by the October 2024 Judgment. In the May 2021 period as evidenced by the November 2023 Judgment. Finally, in the November 2022 to March 2028 period as evidenced by the October 2023 Judgment.

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶19.**

**The Transfer of The Sea Island, Georgia Property**

20. There is parcel of real estate situated in the city of Sea Island, Georgia, commonly known as 114 East 10th Street, Sea Island, Georgia 31561-9668, denominated parcel identification number 05-00433 and which is legally described in Exhibit A (hereinafter the "Flagstad's Sea Island Property" or the "Sea Island Property").

**ANSWER:** **Defendant admits the allegations of ¶20.**

21. On February 19, 2021, Kyle C. Mann, a Texas resident, was the fee simple owner of the Sea Island Property. On that date, Mann entered into a Residential Lease Agreement and a Purchase and Sale Agreement with Brock Flagstad and Meredith Flagstad for the Sea Island

4

Property ("Sea Island Property Agreement"). According to the Sea Island Property Agreement, the lease would expire on January 31, 2024, with a closing date of February 1, 2024, established for the purchase. Notice of the Sea Island Property Agreement was recorded in Glynn County, GA Recorder of Deeds Office in September 2021.

**ANSWER:** **Defendant admits the allegations of ¶21.**

22. On Information and belief, since at least February 19, 2021, to the date of this complaint's filing, Brock Flagstad has occupied the Sea Island Property with his spouse and children as his and their primary residence.

**ANSWER:** **Defendant admits the allegations of ¶22.**

23. Despite at the time being a Georgia resident, on May 24, 2023, Flagstad incorporated an entity called "Oxford Holdings, LLC" with the Illinois Secretary of State. The articles of incorporation Flagstad drafted and signed for Oxford Holdings were replete with intentional misrepresentations Flagstad made to obscure that he exclusively owns and controls Oxford Holdings; Flagstad's misrepresentations as to the street addresses of Oxford Holdings place of business and managers were also meant to obscure its location and prevent Oxford Holdings from being amendable to service of process. Oxford Holdings is Flagstad's alter ego that Flagstad created to hide his interest in the Sea Island Georgia Property.

**ANSWER:** **Defendant denies the allegations contained in ¶23.**

24. On or about February 29, 2024, Kyle C. Mann by deed to "Oxford Holdings, LLC" conveyed fee simple title to the Sea Island property in exchange for about $2.3 million dollars. On information and belief, the transaction was funded by a loan Flagstad, operating as "Oxford Holdings," obtained from Next Bridge Funding, LLC (of Plymouth, MI) and secured by a mortgage against the Sea Island Property that "Oxford Holdings" conveyed to Next Bridge Funding LLC for the maximum principal sum of $3,091.925.

**ANSWER:** **Defendant denies the allegations of ¶24.**

25. On or about April 19, 2024. Next Bridge paid Klaas $127,500 to satisfy the November 2023 Judgment Klaas had against Flagstad.

**ANSWER:** **The Defendant admits that a judgment was paid to Plaintiff to ensure clear title to the purchase of the real property.**

26. On or about April 19, 2024, Flagstad, via "Oxford Holdings," by deed to defendant Charles A. Bollman conveyed fee simple title to the Seal Island Property to Bollman.

**ANSWER:** **The Defendant denies the allegations of ¶26.**

27. At the same time he took title to the Sea Island Property, Charles A. Bollman mortgaged the Sea Island Property to Kemba Credit Union in the fixed sum of $3,345,000 with a

5

fixed 30-year term and an adjustable interest rate, initially 6.75 per cent, and subject to change beginning May 2029. In addition, Charles A. Bollman signed a "Second Home Rider" to the mortgage. The monthly mortgage payment is estimated to be $21,695.61.

**ANSWER:** **Defendant admits the allegations of ¶27, but denies that the mortgage payment is correctly stated.**

28. On June 6, 2024, after his attorney withdrew from the case, Flagstad filed an appearance in the Channel Clarity Holdings Case listing the Sea Island Property as his address.

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶28.**

29. Flagstad has at least one other money judgment of record that appears unsatisfied and at least three lawsuits in which other creditors are seeking personal money judgments against Flagstad.

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations of ¶29.**

## COUNT I
### Fraudulent Transfer under 740 Ill. Comp. Stat. 160/5(a)

30. Klaas realleges and incorporates by reference paragraphs one through 29 as paragraphs one through twenty-nine (29) of this Count I.

**ANSWER:** **Defendant herein incorporates his response to ¶1-29.**

31. Under 740 ILCS 160/5(b), Flagstad, via his alter ego, Oxford Holdings, transferred the Sea Island Property to Bollman with actual intent to hinder, delay or defraud Klaas because:

    a. The transfer was to an insider, inasmuch as Charles Bollman is the father Flagstad's friend.

    b. Flagstad retained possession or control of the property transferred after the transfer inasmuch as the Sea Island Property remained Flagstad's residence before and after the transfer.

    c. The transfer obligation was concealed inasmuch as Flagstad used his alter ego, Oxford Holdings: (i) to conceal Flagstad taking ownership of the Sea Island Property and (ii) to further conceal his ownership by the "'paper transfer'" to Charles Bollman. In addition, Flagstad's incorporation of Oxford Holdings itself was riddled with fabrications meant to obscure the location of Oxford Holdings for service of process purposes.

    d. In the four years before the Sea Island Property transfer was made, Klaas had been investigating and prosecuting Flagstad's diversion and embezzlement of Channel Clarity's assets.

    e. In November 2023, Klaas obtained a $119,000 judgment against Flagstad. On February 29, 2024, Flagstad, using his alter ego, Oxford Holdings, acquired a fee simple interest in the Sea Island Georgia Property and a month later Flagstad's alter ego, Oxford Holdings, transferred the Property to Charles Bollman to further obscure Flagstad's ownership of the Sea Island Property.

    f. Flagstad's other creditors besides Klaas have filed suits to obtain personal money judgments against Flagstad and at least one of those suits was reduced to a money judgment against Flagstad before the Sea Island Property Transfer occurred.

    g. The transfer of the Sea Island Property represented Flagstad's efforts to conceal the Sea Island Property from Klaas.

    h. On information and belief, Charles Bollman provided no consideration to Flagstad in exchange for the Sea Island Property.

    i. On information and belief, the Sea Island Property transfer rendered Flagstad insolvent.

    j. The Sea Island Property transfer occurred within months of Klaas obtaining two different money judgments against Flagstad.

**ANSWER:** **Defendant denies the allegations contained in ¶31.**

32. Flagstad caused the transfer of the Sea Island Property to Charles Bollman to hinder, delay, and defraud his creditors, including Klaas, in the collection of their lawful debts.

**ANSWER:** **Defendant denies the allegations of ¶32.**

33. Flagstad undertook the aforesaid acts and omissions in violation of section 5 of the Illinois Uniform Fraudulent Transfer Act, 740 Ill Comp. Stat. 160/5(a).

**ANSWER:** **Defendant denies the allegations of ¶33.**

WHEREFORE, Defendant, CHARLES A. BOLLMAN, requests judgment be entered in his favor.

7

### FIRST AFFIRMATIVE DEFENSE

44. The Complaint filed by the Plaintiff herein fails to state a claim(s) for or cause of action for which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

47. The Plaintiff's claims are barred by doctrine of waiver, laches, and estoppel.

Amir R. Tahmassebi, #6287787  
KONICEK & DILLON, P.C.  
70 West Madison Street, Suite 2060  
Chicago, IL 60602  
(312) 328-9166 (Direct)  
(630) 262-9659 (Fax)  
amir@konicekdillonlaw.com

Respectfully submitted,

/s/ Amir R. Tahmassebi  
Attorney for Defendant